UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| STEVEN G. GRUBICH,<br>　　　　Plaintiff, | )<br>)<br>) |
| v. | )　　CAUSE NO.: 2:20-CV-375-JEM<br>) |
| KILOLO KIJAKAZI, Acting Commissioner<br>of the Social Security Administration,<br>　　　　Defendant. | )<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Steven G. Grubich on October 19, 2020, and Plaintiff's Brief in Support of Reversing or Remanding the Decision Subject to Review [DE 17], filed May 15, 2021. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On September 12, 2021, the Commissioner filed a response, and Plaintiff filed his reply on September 24, 2021. For the foregoing reasons, the Court remands the Commissioner's decision.

**I.　　Background**

On May 15, 2018, Plaintiff filed an application for benefits alleging that he became disabled on January 1, 2018. Plaintiff's application was denied initially and upon consideration. On September 23, 2019, Administrative Law Judge ("ALJ") Jeanette Schrand held a hearing at which Plaintiff, along with an attorney and a vocational expert ("VE"), testified. On December 27, 2019, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.　　The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2.　　The claimant has not engaged in substantial gainful activity since January

1

      1, 2018, the alleged onset date.

3.     The claimant has the following severe impairments: depression, anxiety, borderline intellectual functioning, neuropathy, peripheral arterial disease, and hearing loss.

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.     The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with exceptions. Specifically, the claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. He is never to climb ladders, ropes or scaffolds, but is able to occasionally climb ramps and stairs and crouch, kneel and crawl and able to frequently balance and stoop. The claimant is limited to a work environment with a moderate noise intensity level as defined in the SCO. Mentally, he is able to understand, remember and carry out work that consists of simple and routine tasks. The claimant can work in an environment free of fast paced or timed piece rate production work; however, he is able to meet end of day goals. Last, the claimant is limited to no more than routine judgment defined as being able to make simple work-related decisions.

6.     The claimant is unable to perform any past relevant work.

7.     The claimant was an individual closely approaching advanced age on the alleged disability onset date.

8.     The claimant has at least a high school education and is able to communicate in English.

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2018 through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final

decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 9]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*,

3

381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III. Analysis

Plaintiff argues that ALJ improperly discounted testimony of subjective symptoms on the basis that they were not supported by objective medical evidence. Plaintiff also argues that the ALJ erred in assessing Plaintiff's RFC because she improperly considered Plaintiff's conservative medical treatment and declined mental health treatment. The Commissioner argues that the ALJ's decision was supported by substantial evidence, and the ALJ properly assessed the subjective symptoms along with the objective medical evidence and supported her conclusions.

Plaintiff argues that the ALJ improperly relied on his conservative treatment and declination to go to behavioral health treatment as a reason to conclude that Plaintiff's subjective symptoms were not supported by objective evidence. The ALJ assessed the Plaintiff's limitations in his ability to adapt or manage himself as mild, concluding, "The claimant also declined to go to behavioral health, which is evidence that his problems were not as severe as he claims." AR 28. The ALJ also noted that "[Plaintiff's] conservative treatment, which mainly consisted of obtaining refills on his medication and occasional counseling, warrants the findings in the "B" criteria." AR 28. When failure to seek medical treatment or comply with treatment recommendations is used as a factor in determining whether a claimant's statements regarding his symptoms are to be believed, an ALJ is required make a determination about whether the lack of treatment is justified and develop the record accordingly. SSR 16-3p, 2016 WL 1119029, *8 (Mar. 16, 2016); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p, 1996 WL 374186 (July 2, 1996)).

The ALJ did not question Plaintiff about his treatment decisions. Although there are indications in the record that Plaintiff sometimes did not seek medical treatment because he could not afford it, the ALJ did not ask at the hearing about this reasoning or his lack of medical insurance. AR 58-59.  An ALJ can, by and large, discount a claimant's testimony in light of routine and conservative treatment, so long as the ALJ does not unreasonably minimize the extent of the claimant's treatment, *see Huber v. Berryhill*, 732 F. App'x 451, 456 (7th Cir. 2018), or make assumptions about the claimant's failure to seek treatment without asking the claimant about the reasons for noncompliance. *See Keiper v. Berryhill*, 383 F. Supp. 3d 819, 823 (N.D. Ind. 2019). Because the ALJ never delineated or defined what she meant by "conservative treatment,"

it appears that she considered her own subjective notions about Plaintiff's medical treatment to discredit his testimony about his symptoms. Such an assessment is improper. *See Suess v. Colvin,* 945 F. Supp. 2d 920, 929 n. 13 (N.D. Ill. 2013), *see also Craft v. Astrue*, 539 F. 3d, at 679. Likewise, the ALJ failed to determine whether Plaintiff's inability to afford insurance or to visit a doctor were reasons behind his treatment decisions, which is also improper. *See Keiper,* 383 F. Supp. 3d at 823 ("A claimant's inability to afford treatment can excuse the failure to seek such treatment, and by failing to explore this possibility as an explanation for [claimant's] 'routine' care, the ALJ committed error."). She noted that he was unable to attend at least some behavioral therapy sessions due to transportation issues but appears to have ignored that difficulty in concluding that Plaintiff's failure to attend behavioral therapy was evidence that his condition was not as severe as he testified. She also failed to ask Plaintiff why he may have declined further behavioral therapy as noted in his treatment records. This failure to investigate any reasons behind these treatment decisions is improper. SSR 16-3p, 2016 WL 1119029 at *8.

Plaintiff also argues that the ALJ erred by ignoring Plaintiffs' subjective evidence of his symptoms, both those related to anxiety and neuropathy. An ALJ must consider a claimant's statements about his symptoms and how these symptoms affect the claimant's activities of daily living and ability to work. 20 C.F.R. §§ 404.1529(a), 416.929(a). Plaintiff testified that he has panic attacks one or two times a month, caused by "doing too much." AR 60-62. Plaintiff's treating therapist, LLSW Amanda Chatman, made reports of anxiety over the course of treatment. AR 347-423. She included descriptions of some improvement in depression and sleeping at night but no improvement in anxiety or "leg shaking." The ALJ noted these opinions and records in her findings but failed to describe how she incorporated Ms. Chatman's treatment notes in her analysis. Plaintiff was also examined by Robert J. Walsh, PsyD, in September 2018, who found that Plaintiff had a

6

Full Scale IQ of 62, a Verbal Comprehension Index of 63, a Perceptual Reasoning Index of 73, a Working Memory Index of 71, and a Processing Speed Index of 62, putting Plaintiff in the mildly to moderately disabled range. The examining psychiatrist opined that Plaintiff "shows significant intellectual deficits with severe learning problems as well as depression and anxiety." AR 343. Again, the ALJ identified these conclusions in her decision, but did not address how they were weighed or assessed, or if they were even considered, in her ultimate decision. In addition, Plaintiff argues that the opinion of Dr. Shah was not given sufficient weight. He argues that Dr. Shah's October 4, 2018, examination reported both cognitive deficits and gait/pain in his lower extremity issues. Dr. Shah's assessment was "likely over use, neuropathy." AR 387. At Plaintiff's follow up visit on October 15, 2018, Dr., Shah diagnosed Plaintiff with peripheral arterial disease. AR 403. The ALJ concluded that "the claimant's conservative treatment and normal gait except when he was initially diagnosed with peripheral arterial disease is evidence that he is not as limited with his lower extremities as Dr. Sham [sic] opines." AR 25.

The ALJ is required to consider five factors when considering medical opinion evidence: supportability; consistency; relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship); specialization; and other factors. 20 C.F.R. § 416.920(c). The most important factors are supportability and consistency, and the ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions … in [the] determination or decision." 20 C.F.R. § 416.920(b)(2).

The ALJ has provided no explanation of how Plaintiff's assessment by Robert Walsh or his treatment at the North Shore Family Clinic were inconsistent with Plaintiff's subjective symptoms of anxiety and panic attacks. The ALJ must "provide a 'logical bridge' between the evidence and

7

his conclusions," and she has failed to do so in this case. *O'Connor-Spinner*, 627 F.3d at 618. The ALJ erred in failing to support the decision with evidence from the record. She provided a long description of the medical evidence in her opinion, AR 21-27, but other than discounting much of it, did not address any of this evidence in her analysis of Plaintiff's subjective symptoms. "A list of evidence punctuated with a conclusion does not discharge an ALJ's duty to form a logical bridge between the evidence and [her] conclusion that [Plaintiff] has no marked limitations." *Pimentel v. Astrue*, No. 11 CV 8240, 2013 U.S. Dist. LEXIS 2548, at *25 (N.D. Ill. Jan. 8, 2013); *see also Smith v. Astrue*, No. 02 CV 6210, 2011 U.S. Dist. LEXIS 17691, at *31 (N.D. Ill. Feb. 22, 2011) ("cataloguing [the evidence] is no substitute for analysis or explanation.").

The ALJ also appears to have ignored evidence that ran contrary to her opinion. The record demonstrates that Plaintiff suffered from panic attacks which include dizziness and leg shaking, one to two times a month and medical notes stated that he was not improving, AR 348, 354, 372, but the ALJ did not include any consideration of necessary time off work or off task for that. It appears that the ALJ substituted her own medical judgment for that of the physicians by concluding that some normal test results mean that the physicians' analysis of Plaintiff's mental and physical limitations are not accurate, and that she gave weight to only the more normal findings in the record rather than the significant reports of physical limitations. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014), as amended on denial of reh'g (Oct. 24, 2014) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves."); *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) ("An ALJ cannot rely only on the evidence that supports her opinion."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.");

*Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"). The ALJ completely disregarded the opinion of Plaintiff's mental health professionals and treatment notes from his LLSW. She also ignored information from agency personnel who noted that Plaintiff had limitations in hearing and cognition, as well as that he seemed tired AR 242-245... On remand, the ALJ is to consider all information about Plaintiff's limitations from all treating and examining sources. SSR 16-3, 2016 WL 1119029.

Plaintiff also argues that the RFC is unsupported by evidence. In particular, Plaintiff argues that does it not address Plaintiff's time off-task as a result of his dozing spells, or his time off work as a result of his panic attacks. This case is being remanded for a new determination of the effects of his daytime dozing spells and panic attacks, and the new RFC should incorporate all limitations related to his condition. In addition, Plaintiff argues that the ALJ erred in failing to explain how Plaintiff's dozing spells or time off work as a result of his panic attacks were incorporated into the RFC, particularly since the ALJ did not include the dozing off limitation in the questions addressed to the VE. When dozing off one or two times a day for 10 to 15 minutes at a time was added to the limitations in questioning by Plaintiff, the VE testified that such a person would be unemployable. AR 74. "When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

On remand, the ALJ is directed to consider all of the medical evidence and opinions in the record. The ALJ should fully consider each of Plaintiff's alleged impairments, alone and in combination, and provide a logical bridge from the evidence to his conclusion.

## VI. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 17] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 28th day of February, 2022.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record